IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Nancy Kester, <br><br> Plaintiff, <br><br> v. <br><br> Menard, Inc., and JAK Property Services, <br><br> Defendants. | Case No. 3:20-cv-50289 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nancy Kester brings this negligence action against Menard, Inc. ("Menard") and JAK Property Services ("JAK"), with whom Menard contracts to sweep its parking lot where Ms. Kester was injured. Both defendants now move the Court for summary judgment. For the reasons explained below, both motions [59, 62] are granted.

**I.   Background**

On September 3, 2018, Plaintiff Nancy Kester went the Menard home improvement store in Rockford, Illinois, with her daughter to exchange some paint.[1] On the way back to her car, her foot got caught on a black plastic binding strap.[2] The strap buckled, causing the other end of the strap to extend into the air. The strap then caught Kester's other foot and caused her to fall and suffer injuries.

---

[1] The facts recited here are taken from the parties' Local Rule 56.1 statements of undisputed facts.
[2] The straps come in a variety of colors, but most are white.

Kester never saw the binding strap on the ground before she fell. It had not been cut and was about the same circumference as a basketball. Kester was then taken to a nearby hospital by ambulance.

Menard contracted with JAK to provide mechanical parking lot sweeping services each week, though Menard apparently increased that to twice per week. Per the terms of the contract, the last time JAK had swept the parking lot before the accident was on August 31, 2018. Thus, three days had passed between the last sweeping service and Kester's fall. In addition to the sweeping service, Menard tasks its employees with maintaining the parking lot. Front end employees are expected to retrieve shopping carts, clean out the trash cans, and help customers load items into their vehicles. When performing these tasks, employees are expected to pick up and dispose of any debris they find on the ground. The manager of the front-end employees, Kay Nordquist, estimated in her deposition that front-end employees are in the parking lot on an hourly basis, if not more.

The record contains no evidence of why the binding strap was in the parking lot or how it got there. Nordquist testified in her deposition that she has never heard of a customer tripping and falling because of a binding strap, and she had never seen one in the parking lot. Likewise, the general manager, Randall Erickson had never seen a binding strap of any color in the parking lot. He explained that about five percent of items that leave the store are bound with these black straps. They are mostly used with shelves and building materials and typically (but not always) require a knife to remove. Team members never cut the straps off in the

2

parking lot. Instead, any time an employee needs to remove a binding strap, it is done in the back of the store and then placed in the compactor.

## II.     Analysis

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250–51. The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary judgment is only warranted if, after doing so, [the court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

To establish negligence in Illinois, the plaintiff must show that the defendants owed a duty of care, that it breached, and that the breach caused the injuries. *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014). These are elements, not factors. To succeed, Kester would have to prove all of them at trial. Therefore, to succeed on a motion for summary judgment, Menard and JAK need only show that Kester cannot prevail on any one of the elements.

3

### A. Menard's Motion for Summary Judgment

Subject to exceptions, Illinois businesses generally owe their customers a duty to maintain their premises in reasonably safe conditions to prevent injuries from slip and fall accidents. *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2018). That duty can be breached in one of three ways: (1) the substance on which the invitee slipped was placed there by the negligence of the business, (2) the business had actual notice of the substance's existence, or (3) the substance was there long enough that the defendant should have discovered it if exercising ordinary care such that the defendant was on constructive notice. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014); *Reynaud v. Dollar Tree Stores, Inc.*, No. 18-cv-8017, 2021 U.S. Dist. LEXIS 146324, at *3 (N.D. Ill. 2021).

First, it's not clear whether Kester argues that the binding strap was placed there through the negligence of Menard's employees. Her citation to *Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 731 (N.D. Ill. 2017) is the only reason to think she might be. In that case, a court in this district merely pointed out that a plaintiff need not prove actual or constructive notice if she can show that the object was placed on the ground through the negligence of the defendant or its employees. *Id.* That is the first option listed above. But even if she makes that argument, the record contains no evidence to suggest that the binding strap was placed in the Menard parking lot because of the negligence of its employees. Such an argument, if Kester intended to make it, is perfunctory, undeveloped, and speculative. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (explaining that

4

perfunctory and undeveloped arguments are waived); *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014) (rejecting the theory that a Wal-Mart shelf stocker had negligently spilled water on the floor because it was "based purely on speculation").

Menard argues that Kester has presented no evidence that it was on notice of the strap's presence in the parking lot.[3] Dkt. 61, at 10. In response, Kester concedes that she can only prevail on showing that Menard had constructive notice of the binding strap. Dkt. 64, at 10. Indeed, the record contains no evidence that can establish how long the binding strap was in the parking lot (although presumably it was three days or less), or who put it there, so Kester is left to argue constructive notice. *Zuppardi*, 770 F.3d at 650. Constructive notice can be shown through (1) evidence that the substance was on the ground for a sufficient amount of time such that ordinary care would have revealed its presence, or (2) evidence that the issue is a recurring incident. *Id.*

Rather than argue under one of these two options, Kester contends that Menard has effectively conceded the issue of constructive notice by presenting evidence that its employees routinely go into the parking lot to retrieve carts and pickup any debris they find. Dkt. 64, at 13. In support, Kester cites *Peterson v. Wal-*

---

[3] Kester begins by arguing that Menard is not arguing that it did not have a duty of care. Dkt. 64, at 4. That is incorrect. Menard's argument that it was not on notice speaks to its duty of care. Restatement (Second) of Torts § 342; *id.* § 343, cmt. b ("To the invitee the possessor owes not only this *duty*, but also the additional *duty* to exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land, and to give such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.") (emphasis added).

5

*Mart Stores, Inc.*, 241 F.3d 603 (7th Cir. 2001). But the case law, taken as a whole, does not support her theory. In *Peterson*, the Seventh Circuit reversed the district court's grant of summary judgment because Wal-Mart presented evidence that it patrolled its aisles constantly for signs of spills. The court explained that if that testimony were true, then a jury could find that the patrolling employees were careless when they failed to notice the spilled lotion. *Peterson*, 241 F.3d at 605. The problem in *Peterson* was that if the Wal-Mart employees *constantly* patrolled the aisles looking for any dangers, then a jury could believe "that the employees may have been careless not to have noticed the spilled lotion." *Id.*

But, as *Peterson* noted, notice is determined by the circumstances of a particular case. *Peterson*, 241 F.3d at 605. This case is more like three other Seventh Circuit decisions.

First, in *Reid v. Kohl's Department Stores, Inc.*, the plaintiff fell after slipping on a milkshake. 545 F.3d 479, 480–81 (7th Cir. 2008). The on-duty manager testified that the store's routine procedure "involved a continuous walk-through by the manager on duty to ensure that the store was clean and safe." *Id.* at 481. The manager had performed that walkthrough no more than ten minutes before the plaintiff slipped but did not see any milkshake on the floor. *Id.* In that case, the only evidence the plaintiff could point to regarding how long the milkshake was left on the floor was the milkshake itself. She argued a jury could look at the level of melting of the shake to conclude how long it had been on the floor. But the court deemed that too speculative. *Id.* at 482. Instead, the court reiterated that plaintiffs

6

cannot establish constructive notice under Illinois law in absence of "evidence demonstrating the length of time that the substance was on the floor." *Id.* Because no such evidence existed, Kohl's was entitled to summary judgment. Importantly, the court cited the defendant's internal procedure to monitor for spills to explain that it had "appropriately addressed the threat of such issues." *Id.*

Second, in *Zuppardi v. Wal-Mart Stores, Inc.*, the plaintiff slipped on what appeared to be water on the concrete floor near a set of doors in the back of the store that was frequently used by employees because it led to the overstock room, the time clock, the management offices, and the employee break room. 770 F.3d 644, 646 (7th Cir. 2014). An assistant manager explained that store procedure called for routine safety sweeps that focused on high traffic areas and that "employees were tasked with monitoring the action alleys and scanning for unsafe conditions while performing their other job duties." *Id.* at 647. If they saw a spill, they cleaned it up. *Id.* In that case, Zuppardi contended that if Wal-Mart had abided by its safety procedures, it would have noticed the puddle. *Id.* at 652. The Seventh Circuit rejected that argument and explained that it would require the type of "continuous monitoring" that "Illinois courts have summarily rejected." *Id.* (collecting cases). Instead, the court explained that Wal-Mart's policies went above and beyond the requirements of the law. *Id.*

And, third, in *Piotrowski v. Menard, Inc.*, the Seventh Circuit held that Menard had no constructive notice when the plaintiff slipped on rocks in a Menard store parking lot. 842 F.3d 1035, 1037 (7th Cir. 2016). The court made this

7

determination because Piotrowski could neither present evidence of how long the rocks had been there nor did she present evidence sufficient to find a pattern of conduct. *Id.* at 1040–41. The rocks resembled those that were in a planter, and a store manager had directed employees to replenish the rock in the planter as needed. Piotrowski contended that this gave rise to the inference that the "rock was escaping onto the pavement where customers walked" and that the manager knew it. *Id.* at 1040. Furthermore, the store's internal policies and procedures required employees to monitor the parking lot for unsafe conditions and the management team also conducted frequent inspections of the parking lot. *Id.* Because Piotrowski could not point to any evidence regarding how long the rocks were in the parking lot, she theorized that Menard should have known that rocks were escaping the planter but took no remedial action. *Id.* at 1040. But under these circumstances, the Seventh Circuit concluded that she had "not shown a pattern of dangerous conditions or a recurring incident which was not attended to within a reasonable period of time." *Id.* at 1040–41 ("That Piotrowski fell in the Menard parking lot, as painful as that fall was, is not enough to support an inference of negligence against Menard.").

In this case, both parties agree that store policy requires that employees look for debris and other unsafe conditions when they go into the parking lot to retrieve shopping carts. And the record indicates that a store employee was in the parking lot soon before the incident occurred.[4] But this is not enough to put Menard on

---

[4] Kester contends that the mere presence of an employee in the parking lot is enough to create a question of fact regarding whether that employee should have seen the binding

8

constructive notice of the binding strap. Neither party has presented any evidence of how the binding strap came to be in the parking lot, or who put it there, though Menard points out that if store employees remove the straps, they do it in the back of the store. Dkt. 66, ¶ 26. Unlike *Peterson*, in which the defendant conceded that it *constantly* monitored the area (such that not noticing the substance could supply an inference of negligence), the Menard employees do not *constantly* monitor the parking lot. They pick up any debris they find during their periodic sweeps for shopping carts. In this way, the facts here are more like the facts in *Zuppardi*. In that case, water was spilled on the concrete floor by a frequently used backroom door. 770 F.3d at 646. But the Seventh Circuit reiterated that the duty to maintain a reasonably safe environment does not mandate that employees continuously patrol the aisles and the store's "internal policies and procedures for monitoring spills and other hazardous conditions appropriately addressed the threat of these issues." *Id.* at 652. The same is true here. Menard's employees periodically check for hazardous conditions in the parking lot when they go out to retrieve shopping carts. The Court cannot place a higher duty on Menard than that. Doing so would impose a duty to continuously monitor that has been soundly rejected by Illinois courts. *Id.*

---

strap and picked it up. On the contrary, Kester has presented no evidence that the employee in question was in the same area as the incident. Instead, the photographs in the record show the employee was in another lane of the parking lot. Indeed, the only indication in the record regarding where the employee was located in relation to the site of Kester's fall is in the photos attached to Menard's brief, *see* dkt. 61, at 4, and the photos that were attached as exhibits in one of the depositions and later as an attachment to Kester's response brief, *see* dkt. 64-1, at 75–76. Those photos show a Menard employee walking in the parking lot in a different, but adjacent, lane than the one in which Kester fell. The record contains no evidence to suggest that the employee had recently retrieved carts or surveyed for debris in the area in which Kester fell.

("But more importantly, Zuppardi's argument would therefore require the continuous monitoring and patrolling of a store's safety conditions that we and Illinois courts have summarily rejected.").

And though Kester doesn't actually develop an argument under the recurring incident theory, no evidence to support that theory exists in the record. The parties agree that binding straps had never been a problem in the parking lot before. Dkt. 66, ¶¶ 32, 40. Kester contends, however, that it does not need to point to other incidents of slips and falls on binding strips. Dkt. 64, at 11 ("[R]ather, it must simply be reasonably foreseeable to an ordinarily prudent person that injury will probably result from the defendant's failure to exercise ordinary care."). But that argument misses the mark. As explained above, the Court cannot impose upon Menard a general duty to continuously monitor the parking lot. That was thoroughly explained in *Zuppardi*. Kester's position would require exactly that.

Instead, Menard only has a duty to maintain a reasonably safe parking lot, and it upholds that duty by instructing its employees to periodically inspect for hazardous conditions. In those circumstances, Kester can only establish that Menard had an additional duty of care in this specific case if she can show that the hazard was placed there through Menard's negligence, that it had actual knowledge of the hazard, or that it had constructive knowledge based on how long the binding strap had been in the parking lot or based on the recurring incident theory. *Zuppardi*, 770 F.3d at 649; *Reynaud*, 2021 U.S. Dist. LEXIS 146324, at *3. Because Kester can point to no evidence to support any of those theories, Menard had no

duty of care under these circumstances. It is entitled to judgment as a matter of law.[5]

### B. JAK's Motion for Summary Judgment

Kester also sues JAK Property Services, the company Menard contracted to perform parking lot sweeping services. Dkt. 48, at 3. The only evidence in the record regarding JAK's involvement in this case is that it last performed on that contract three days before Kester fell. JAK does not own the premises. Its only involvement in this case arises by virtue of its contract with Menard to sweep the parking lot. JAK moves the Court for summary judgment on the theory that it did not owe Kester a duty of care and, even if it did, the record contains no evidence that it breached that duty.

Whether a defendant owed the plaintiff a duty of care is determined "by asking 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (quoting *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 831 (Ill. 1990)). Illinois

---

[5] Kester also raises a claim of poor illumination in response to the motions for summary judgment. At this stage, that is not appropriate. Dkt. 64, at 9–10. Effectively, Kester contends that if the parking lot was better illuminated, she would not have tripped on the black binding strap. In other words, she contends that Menard failed to maintain a reasonably safe parking lot because it did not have sufficient lighting. But if such a claim exists, it is "analytically distinct" from her standard slip and fall claim that is based on constructive notice. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 709 n.2 (7th Cir. 2011) (plaintiff could not amend the complaint through summary judgment briefing to add an analytically distinct claim); *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000). Thus, the Court will not consider this new and analytically distinct claim that Kester has raised in response to the motions for summary judgment.

courts analyze four factors in determining whether a duty of care existed: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Id.* (quoting *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010)).

JAK does not own the premises. Outside of the contractual relationship with Menard, JAK is not responsible for the maintenance of the parking lot. The contract requires JAK to sweep the parking lot and pick up debris, but it only calls for that maintenance on a weekly basis, or as otherwise directed by the store's general manager. Dkt. 59-2, at 40 (contractual scope of work); Dkt. 65, ¶¶ 6–7. The lack of privity with Kester, however, is not dispositive. In *Vesey v. Chicago Housing Authority*, the Illinois Supreme Court quoted the Restatement of Torts to explain that when a defendant sets out to perform a duty owed by another, whether gratuitously or for consideration, a duty of care may arise. 583 N.E.2d 538, 543–44 (Ill. 1991) (quoting Restatement (Second) of Torts § 324A(b) (1965)); *see also* Restatement (Second) of Torts §§ 383–85.

JAK's argument at times assumes that traditional notions of premises liability apply in this case. Although that is certainly true of the Menard analysis, it is not true with respect to Kester's claims against JAK. It is axiomatic that premises liability assumes the defendant owns or occupies the premises. Restatement (Second) of Torts § 343 (focusing on the possessor of land); *see also* Illinois Civil Pattern Instruction 120.02, Comment. JAK does not. And the

traditional premises liability analysis here makes no sense. The record is void of any evidence that JAK actually knew about the binding strap. And there is no evidence that JAK placed the strap in the parking lot. Even if JAK did know about it, the contract to sweep the parking lot did not call for continuous maintenance responsibilities. Dkt. 65, ¶ 5. So, even if JAK knew about the binding strap, an extracontractual mission to clean the parking lot outside the agreed upon days would amount to trespass.

The same is true of constructive knowledge. The record contains no evidence to establish how long the strap had been in the parking lot before the incident. But even if such evidence were available, the theory of constructive notice is a legal fiction that imputes notice on the defendant because its control over the premises means that the exercise of ordinary care would have made the defendant aware of the unsafe condition. *Hayes v. Bailey*, 400 N.E.2d 544, 546 (Ill. 1980). But here, JAK does not have that control, and so constructive notice cannot apply.

This determination is supported by the Illinois Court of Appeals' decision in *Williams v. Sebert Landscape Co.*, 946 N.E.2d 971 (Ill. App. Ct. 2011). In that case, the plaintiff sued a snow removal company. Snow had fallen in the area two days before, and the defendant had plowed the lot the day before the incident. *Id.* at 973. The court explained that the defendant was merely a contractor that did not exercise control over the property. Thus, it applied ordinary negligence principles. *Id.* at 974–75. In applying ordinary negligence principles, the court explained that the duty of cared owed by the snow removal company was defined by the scope of

13

the contract with the property owner. That duty was "only to not negligently remove the snow." *Id.* at 974. The same is true here. The duty that JAK owed was limited to its obligation to perform its contractual duty in a nonnegligent manner. It had no duty of care to maintain a reasonably safe parking lot in general.

Given that JAK's duty was limited to the performance of its contractual duty, Kester would have to establish that JAK breached that much more limited duty and that such a breach proximately caused Kester's injuries. It cannot show either. Under the terms of the contract, JAK's role was to "perform mechanical sweeping, collection, and disposal of trash and debris" on a weekly basis or as otherwise directed. Dkt. 65, at 6. The record contains no evidence to suggest that such mechanical sweep was performed negligently. Kester contends that JAK failed to fill out a checklist showing which areas it swept and further failed to manually verify the safety of all areas of the parking lot after the mechanical sweeping had concluded. Dkt. 64, at 10.

But that is not enough to create a genuine issue of material fact for two reasons. First, Kester has not presented any evidence to show that JAK was contractually required to do anything other than mechanically sweep the parking lot. So, even if JAK did fail to do a thorough walkthrough of the lot after mechanical sweeping had concluded, the record doesn't establish that it had a duty of care to do so. Second, the record contains no evidence that the binding strap was actually in the parking at the time of JAK's sweeping. So, even if JAK failed to properly perform its contractual duty, the record contains nothing to establish that any

14

breach had any causal connection at all to Kester's injuries. *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014). As JAK stated in its motion, "Plaintiff cannot identify any evidence that demonstrates that JAK Property somehow caused the strap to be in the parking lot or allowed the strap to remain behind after sweeping." Dkt. 59, at 11. In large part, that is because Kester has presented no evidence to establish when the binding strap was placed in the parking lot or whether it was even there when JAK performed its services. At this stage, a failure to present sufficient evidence is fatal to Kester's claim. *Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021). Thus, the facts in the record could not allow a reasonable jury to find in Kester's favor, and so JAK is entitled to judgment as a matter of law.

### III.  Conclusion

For the reasons stated above, the Court grants both motions for summary judgment [59, 62]. Civil case terminated.

Date:  December 9, 2021

_____
Honorable Iain D. Johnston
United States District Judge